**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri Plumb, | No. CV-20-08223-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Terri Plumb's Application for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 21, "Pl.'s Br."), Defendant SSA Commissioner's Response Brief (Doc. 22, "Def.'s Br."), and Plaintiff's Reply Brief (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 19, R.) and now affirms the Administrative Law Judge's decision (R. at 26) as upheld by the Appeals Council (R. at 1.)

I.      **Background**

Plaintiff filed her application for Disability Insurance Benefits on May 17, 2016, for a period of disability beginning on March 20, 2016. (R. at 16.) The SSA initially denied Plaintiff's claim on October 4, 2016, and denied it again upon reconsideration on December 1, 2017. (R. at 141, 152.) On September 25, 2019, Plaintiff testified at a video hearing before Administrative Law Judge ("ALJ") Myriam Fernandez Rice (R. at 35), who

1   subsequently issued a decision denying Plaintiff's claim on November 1, 2019. (R. at 26.)

2   The Appeals Council then denied Plaintiff's Request for Review of the ALJ's decision on

3   June 25, 2020. (R. at 1.)

4          The Court has reviewed the medical evidence in its entirety and finds it unnecessary

5   to provide a complete summary here. The pertinent medical evidence will be discussed in

6   addressing the issues raised by the parties. Upon considering the medical records and

7   opinions, the ALJ determined that Plaintiff had the severe impairment of lumbar

8   degenerative disc disease with radiculopathy and cervical stenosis, as well as the following

9   non-severe impairments: hypertension, diabetes mellitus, gastrointestinal issues, psoriasis,

10  and obesity. (R. at 19.)

11         After reviewing the medical evidence and testimony, the ALJ concluded that

12  Plaintiff is not disabled. Specifically, the ALJ determined that Plaintiff "does not have an

13  impairment or combination of impairments that meets or medically equals the severity of

14  one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 21.) The

15  ALJ also determined Plaintiff has the residual functional capacity ("RFC") to perform light

16  work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). (R. at 22.) The ALJ found that

17  Plaintiff can perform "light work . . . except she is limited to frequent overhead lifting and

18  handling. She can occasionally stoop, crouch, crawl, and kneel. [She] can frequently

19  balance. She can occasionally climb ramps and stairs and ladders, ropes, or scaffolds."

20  (R. at 22.) The ALJ concluded that Plaintiff could perform her past relevant work as a

21  medical assistant, dispatcher, and retail sales customer service representative. (R. at 25.)

22  **II.    LEGAL STANDARD**

23         In determining whether to reverse an ALJ's decision, the district court reviews only

24  those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

25  517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

26  determination only if the determination is not supported by substantial evidence or is based

27  on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more

28  than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person

might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff's sole argument before the Court is that the ALJ erred in evaluating and weighing the medical opinions of Dr. Laurel Retay, Dr. Robin Rosenstock, and Dr. Ernest

Griffith. (Pl.'s Br. at 3; Def.'s Br. at 2.) The ALJ determined that Plaintiff possessed an RFC that allowed her to do light work with only minor exertional and postural limitations. In formulating this RFC, the ALJ relied on three medical opinions. Plaintiff argues that the ALJ erred in assigning great weight to the two nonexamining SSA physicians' opinions while assigning little weight to the opinion of Plaintiff's treating physician. (Pl.'s Br. at 11–12.) The Court disagrees with Plaintiff's argument.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*; *see* 20 C.F.R. § 404.1527(c).[1]

Given this hierarchy and a treating physician's position at the top of it, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden only by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."). Normally, "[t]he opinion of a nonexamining

---

[1] On January 18, 2017, the SSA adopted new rules that may abrogate the Ninth Circuit's hierarchy of physicians' opinions. 20 C.F.R. § 404.1520c; *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021); *Shelley D. v. Kijakazi*, No. 1:20-CV-00144-REP, 2021 WL 4443322, at *7 (D. Idaho Sept. 28, 2021). However, the new rules only apply to claims filed on or after March 27, 2017. Because Plaintiff filed her claim on May 27, 2016, the Court will not consider the effect of the new rules and will continue to apply the Ninth Circuit's hierarchical standard.

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Lester*, 81 F.3d at 831. But where "the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff originally filed for benefits in May 2016. Plaintiff's records were reviewed by nonexamining SSA physician Dr. Robin Rosenstock, who issued a medical opinion in September 2016 stating that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and walk for six hours per workday, and sit for six hours per workday. (R. at 63.) Plaintiff's records were reviewed upon reconsideration by nonexamining SSA physician Dr. Ernest Griffith, who issued a medical opinion in November 2017 that reflected the same exertional limitations as the previous opinion but that added certain postural limitations. Dr. Griffith found that Plaintiff was limited to frequent ladder climbing, occasional stooping, frequent kneeling, frequent crouching, and frequent crawling. (R. at 115–16.) Dr. Laurel Retay served as Plaintiff's treating physician between February 2018 and April 2019. (R. at 828–64.) In August 2018, in the midst of this treatment period, Dr. Retay issued an opinion regarding the extent of Plaintiff's disability that differed substantially from the opinions of the two SSA nonexamining physicians. Dr. Retay found that Plaintiff could sit for only ten minutes at a time and for less than two hours per workday; stand for only fifteen minutes at a time and for less than two hours per workday; occasionally lift items weighing less than ten pounds; rarely twist and crouch; and never stoop or climb stairs. Additionally, Dr. Retay found that Plaintiff would need to frequently switch positions, take unscheduled twenty-minute breaks every two hours, and elevate her legs for the entirety of a sedentary workday. (R. at 714–17.)

The ALJ concluded that Dr. Retay's opinion was controverted by the two SSA physicians' opinion, and ultimately assigned little weight to Dr. Retay's opinion but great weight to the opinions of Dr. Rosenstock and Dr. Griffith. (R. at 24–25.) However, because

the ALJ set forth specific and legitimate reasons that are based on substantial evidence, the Court cannot conclude that she erred.

Plaintiff first contends that the ALJ erroneously assigned little weight to Dr. Retay's opinion because the ALJ wrongly determined that Dr. Retay did not conduct a physical examination in forming her opinion. (Pl.'s Br. at 8.) This is a misreading of the ALJ's opinion. The ALJ wrote that "Dr. Retay did not perform in-depth physical exams to support the significant limitations provided regarding the claimant's ability to lift, sit/stand/walk, perform postural activities, [or] use her upper extremities." (R. at 25.) The ALJ was not asserting that Dr. Retay conducted no examination. Rather, the ALJ was stating that the exams that Dr. Retay *did* conduct were not sufficiently in-depth to support her "extreme" opinion. (R. at 25.) The ALJ was attacking the sufficiency of the exams, not their existence.

Plaintiff next contends that the ALJ erred in finding that Dr. Retay is not a specialist for the purposes of Plaintiff's claims. (Pl.'s Br. at 8.) Under 20 C.F.R. § 404.1527(c)(5), the SSA "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." The ALJ noted that Dr. Retay is "not an orthopedic or neurological specialist, and thus does not have the specialized expertise to make such findings." (R. at 25.) Plaintiff, on the other hand, contends that Dr. Retay's internal medicine practice does qualify her as a specialist. The Court finds that it is unclear whether Dr. Retay qualifies as a specialist in this case. Dr. Retay diagnosed Plaintiff with diabetes type II, ulcerative proctosigmoiditis, renal tubular psoriasis, hypertension, chronic pain, intestinal disease, obesity, diverticular disease, and back pain. (R. at 714.) As will be discussed further in this Order, Dr. Retay provided little to no explanation supporting her findings regarding Plaintiff's functional limitations. Thus, it is not clear which of the various diagnoses lend principal support to Dr. Retay's determination of Plaintiff's functional limitations. However, the record as a whole, including Plaintiff's video testimony, indicates that the primary issue is Plaintiff's pain, especially her back, leg, and shoulder pain. (R. at 38, 44-46.) An internist is not a specialist in back, leg, or shoulder pain. *Isakhanyan v.*

*Berryhill*, No. CV 17-7579 SS, 2018 WL 3424967, at *15 (C.D. Cal. July 12, 2018) (finding that the ALJ properly gave a doctor's opinion less weight because the doctor was an internist, rather than an orthopedic specialist, in a case about pain in the back, neck, joints, knees, and legs); *Caballero v. Colvin*, No. ED CV 14-00964-DFM, 2015 WL 1097319, at *2 (C.D. Cal. Mar. 6, 2015) (finding that the ALJ's reliance on the opinion of an internist over an orthopedic specialist was problematic in a case about cervical and lumbar strain, a protruding lumbar disc, obesity, hypertension, and issues of the knees and extremities). Thus, the ALJ did not err in determining that Dr. Retay was not a specialist. Plaintiff notes that neither of the SSA physicians were specialists either and that the ALJ was therefore hypocritical in mentioning Dr. Retay's lack of special expertise. (Pl.'s Br. at 9–10.) To the extent that Plaintiff argues that the ALJ assigned little weight to Dr. Retay's findings solely on the basis of her nonspecialist status, the Court disagrees. In commenting on Dr. Retay's status as a nonspecialist, the ALJ was stating that Dr. Retay's lack of special expertise militated against an assignment of great weight in the absence of more objective evidence supporting the findings.

Plaintiff next contends that the ALJ erred in finding that Dr. Retay's citation to Plaintiff's paraspinal muscle spasms was insufficient to support Dr. Retay's conclusions regarding Plaintiff's functional limitations. (Pl.'s Br. at 9.) The Court disagrees. An ALJ may discount the opinion of a treating physician when "that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In particular, an ALJ may discount a check-box questionnaire that fails to explain its conclusions. *Wesselius v. Kijakazi*, No. 20-35386, 2021 WL 4948928, at *3 (9th Cir. Oct. 25, 2021) (ALJ properly discounted "check-off" medical opinions because they were "conclusory and no[t] accompanied by any narrative explanation" and did "not contain any explanation of the bases of their conclusions") (internal quotations omitted). Dr. Retay's opinion was a check-box questionnaire. (R. at 714–17.) The only evidence noted by Dr. Retay in her findings of functional limitations were paraspinal muscle spasms, about which Dr. Retay did not elaborate. *Id.* There was no indication of severity or

frequency. The ALJ determined that this evidence alone was insufficient to explain the "extreme" limitations in the opinion (R. at 25), and the ALJ's determination was supported by specific and legitimate reasons based on substantial evidence. The ALJ's opinion relied heavily on the routine and conservative nature of Plaintiff's treatment. (R. at 23–25.) Plaintiff had received only routine and conservative care prior to the alleged onset date, and Plaintiff's care remained routine and conservative after the onset date. Plaintiff underwent several examinations, including a bone density exam in March 2018, a knee exam in December 2018, and two physicals in June 2018, all of which were normal. *Id.* Plaintiff's gait remained normal. (R. at 24.) The only test bearing on Plaintiff's potential neuropathy occurred before the onset date and came back normal. (R. at 23.) Plaintiff has not undergone physical or injection therapy, and she has not been recommended as a candidate for surgery. (R. at 24, 39.) Dr. Retay's own treatment notes indicate no medical interventions outside of medication for pain management. (R. at 23, 828–81.) Finally, the ALJ found it noteworthy that Plaintiff is now the primary caretaker of her grandson and that she conducts daily household activities, such as cooking, doing dishes, and doing laundry. (R. at 24, 38–40.)

Dr. Retay's findings were controverted by the findings of Dr. Rosenstock and Dr. Griffith, and the ALJ determined that the two SSA physicians' opinions were more consistent with Plaintiff's medical record as a whole. (R. at 25.) Accordingly, the ALJ assigned the opinions great weight. Plaintiff, however, asserts that the opinions of the SSA physicians were entitled to no weight. (Pl.'s Br. at 11.) This contention is without merit. Plaintiff focuses on the fact that the two SSA opinions differ with respect to their findings regarding Plaintiff's postural limitations, arguing that this internal inconsistency renders the opinions valueless. The reason for this divergence is explained in Dr. Griffith's opinion. His findings are based in part on an MRI from July 2017, ten months after Dr. Rosenstock had issued her opinion. (R. at 116.)

In sum, the ALJ found that the RFC assessment "is supported by the medical evidence of record that shows mild and well-managed physical impairments that do not

restrict the claimant from performing a host of light activities each day" (R. at 25.) While this evidence might not be overwhelming, it is enough that a reasonable person might accept it as adequate to support the ALJ's conclusion. Thus, this Court cannot say that the ALJ's determination was not supported by substantial evidence.

IT IS THEREFORE ORDERED affirming the November 1, 2019 decision of the Administrative Law Judge (R. at 26), as upheld by the Appeals Council on June 25, 2020 (R. at 1).

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 11th day of February, 2022.

Honorable John J. Tuchi
United States District Judge